**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JELENA JASNIC,                        )
                                      )
            Plaintiff,                )        No. 1:20-CV-02507
                                      )
      v.                              )
                                      )        Judge Edmond E. Chang
BISCO, INC.,                          )
                                      )
            Defendant.                )

**MEMORANDUM OPINION AND ORDER**

Jelena Jasnic filed this lawsuit against her former employer, Bisco, Inc., under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), and the Illinois Human Rights Act, 775 ILCS 5/2-102(I), for pregnancy discrimination (Counts 1 and 4), retaliation (Counts 2 and 4), and retaliatory discharge (Count 3).[1] R. 14, Am. Compl.[2] Bisco moves for summary judgment against all counts. R. 57. For the reasons discussed in this Opinion, Bisco's motion is granted in part and denied in part: the discrimination claims survive, but the retaliation and retaliatory discharge claims do not.

**I. Background**

In deciding Bisco's motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus.*

---

[1]The Court has subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

[2]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

*Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts below are undisputed unless otherwise noted.

## A. Local Rule 56.1

First, Bisco asserts that Jasnic's response to its Statement of Facts failed to comply with Local Rule 56.1 R 58, Def.'s Reply at 2–4. Local Rule 56.1 governs motions for summary judgment in this District. It requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue." L.R. 56.1(a)(3). The non-moving party is then required to respond to "each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." L.R. 56.1(b)(3)(B).

Bisco contends that Jasnic failed to comply with this Rule in several ways. In multiple instances, Jasnic purportedly made conclusory arguments that do not dispute the factual statement. R. 70, Def.'s Reply at 3. Bisco points to Jasnic's response to Defendant's Statement of Facts ¶¶ 28, 29, 40, 43, 46, 49, 52, 53. *Id.* at 3–4. Bisco is mistaken. It is true that conclusory allegations are not evidence. *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). But to the extent that Jasnic disputes Bisco's contentions based on her personal knowledge or firsthand experience, and the contentions are backed up by evidence (whether her own deposition testimony or otherwise), that is sufficient to dispute a material fact even if the contentions are

otherwise uncorroborated by other evidence or is self-serving. *Id.* (cleaned up).[3] For example, Bisco accuses Jasnic of contradicting Carolyn Suh's (the supervisor of Jasnic's own supervisor) mental state on whether Suh was aware of Jasnic's pregnancy. *See* Pl.'s Resp. DSOF ¶¶ 28, 29, 40. Even though Jasnic does not point to *direct* evidence that contradicts Suh's assertion that she did not know about Jasnic's pregnancy during the pertinent time, Jasnic may rely on *circumstantial* evidence to establish that Suh knew. As detailed later in this Opinion, Jasnic asserts that the chronology of events would allow a reasonable factfinder to believe that Suh knew of Jasnic's pregnancy before putting Jasnic on a performance improvement plan. That is not impermissible second-guessing of the mental state of Suh: that is simply putting pieces of circumstantial evidence together. On the main, Jasnic's 56.1 responses are permissible.

## B. Facts

Jelena Jasnic worked as a product manager at Bisco, Inc., a dental medical-device manufacturer, beginning in March 2018. DSOF ¶¶ 1, 2.[4] Jasnic was initially supervised by Patrick Park, but that changed on April 1, 2019, when Katherine Steyer, Bisco's product marketing manager, became Jasnic's supervisor. *Id.* ¶¶ 3, 4.

---

[3]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[4]Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Bisco's Statement of Facts) [R. 59]; "PSOAF" (for Jasnic's Statement of Additional Facts) [R. 71]; "Pl.'s Resp. DSOF" (for Jasnic's response to Bisco's Statement of Facts) [R. 61]; and "Def.'s Resp. PSOAF" (for Bisco's Response to Jasnic's Statement of Additional Facts) [R. 71], followed by the paragraph number.

Steyer, in turn, reported to Carolyn Suh, Bisco's Director of Global Marketing, who manages all marketing team members. *Id.* ¶¶ 5–7.

The parties dispute the quality of Jasnic's work performance after Steyer became her supervisor. Jasnic maintains that she "always met all of Bisco's employment expectations" and was never criticized for her work performance. PSOAF ¶ 1. Indeed, according to Jasnic's yearly performance review in March 2019 (the month before the change in supervisors), Park reported that Jasnic followed all company policies, is a team player, and he believed Jasnic would go far in the company. PSOAF ¶ 3, *see* R. 60-1, Pl.'s Exh. A, Performance Evaluation. She received a salary increase after this review. PSOAF ¶ 4.

In contrast, Bisco contends that even before Steyer became Jasnic's supervisor, Park told Steyer that Jasnic would often miss details and make mistakes in her work. DSOF ¶ 17. Steyer asserts that she too criticized Jasnic within the first month of supervising her. *Id.* ¶ 18; Def.'s Resp. PSOAF ¶ 5. Jasnic denies receiving any of these criticisms. PSOAF ¶ 5; Pl.'s Resp. DSOF ¶ 18.

In July 2019, Jasnic was assigned a project concerning "post-market surveillance documents." DSOF ¶ 19. The parties contest whether Jasnic satisfactorily completed the project. Bisco alleges that Jasnic failed to meet deadlines, presented reports out of order, and was not following project requests. DSOF ¶ 20; Def.'s Resp. PSOAF ¶ 5. In contrast, Jasnic explains that the surveillance project was not even part of her job description, she completed the project on-time, and was never disciplined for her performance on this project. PSOAF ¶ 5; Pl.'s Resp. DSOF ¶¶ 19, 20.

4

In August 2019, Jasnic informed Steyer that Jasnic was six weeks pregnant. Jasnic asked Steyer to keep the pregnancy confidential, and Steyer agreed to do so. DSOF ¶ 21; Pl.'s Resp. DSOF ¶ 21.

In September 2019, Jasnic was allegedly assigned the TheraCal LC and All-Bond Universal accounts, the top two best-selling Bisco products. DSOF ¶ 41; Pl.'s Resp. DSOF ¶ 41. Although Bisco alleges that Jasnic failed to contribute to the project, DSOF ¶¶ 42–45, Jasnic asserts that she actually "had no part in it." Pl.'s Resp. DSOF ¶ 41; *see* R. 59-4, Pl.'s Exh. D, Jelena Jasnic Dep. at 131:6–132:6.

On September 27, 2019, Suh directed Steyer to put Jasnic on a performance improvement plan (commonly known as a PIP). DSOF ¶ 28. The parties disagree over the justification for the PIP. From Bisco's perspective the immediate impetus was Jasnic's performance at a convention. Specifically, in early September 2019, Jasnic attended an American Dental Association (ADA) convention in San Francisco. DSOF ¶¶ 23, 25; PSOAF ¶ 11. Bisco alleges that Jasnic failed to show up for a Bisco-paid outing (a tour of Alcatraz) that she previously had committed to attending, and also did not engage with guests as was required by her job. DSOF ¶ 30, 33; Def.'s Resp. PSOAF ¶ 13. Bisco also contends that Jasnic failed to appear at Bisco's booth on the Friday of the convention—choosing instead to have coffee with a friend. DSOF ¶¶ 31, 35.

Jasnic denies doing anything wrong at the convention. Pl.'s Resp. DSOF ¶¶ 30–35. Jasnic asserts that she did not attend the Alcatraz trip because it was voluntary and because she had morning sickness (it takes a boat ride to get to Alcatraz). PSOAF

5

¶ 13; Pl.'s Resp. DSOF ¶ 33. Jasnic says that she completed all her job duties, including appearing at Bisco's booth on the Friday of the convention. Pl.'s Resp. DSOF ¶¶ 31–32. In any event, Jasnic was put on the PIP—crucially, the PIP refers only to Bisco's criticisms of Jasnic related to the ADA convention. *See* R. 59-3, Def.'s Exh. 1, 09/27/2019 PIP; DSOF ¶ 39. The absence of any other written basis for the PIP is an important fact, as explained later in this Opinion.

Three days after receiving the PIP, Jasnic told Suh she was pregnant. DSOF ¶ 40. During the same conversation, Jasnic allegedly complained to Suh that the PIP was based on her pregnancy and thus discriminatory. PSOAF ¶ 15, 16. Jasnic had made similar complaints to Steyer earlier that month (September 2019). *Id.* ¶ 18. When nothing was done, Jasnic complained to Mike Smith in Human Resources. *Id.* ¶ 20. Yet still nothing was done to resolve her complaint. *Id.* In contrast, Bisco denies that Jasnic ever complained about the PIP being a product of pregnancy discrimination. Def.'s Resp. DSOF ¶¶ 15, 16, 18, 20.

As part of the PIP, Jasnic was subject to periodic performance reviews in 30, 60, and 90 days. DSOF ¶ 38. During Jasnic's second PIP review in November 2019, Steyer[5] noted that Jasnic did not achieve the intended metric of "positivity and performing as a team player." R. 59-3, Def.'s Exh. 2, 11/01/2019 PIP; DSOF ¶ 46. According to Steyer, Jasnic fell short on that aptitude because she had sarcastically spoken about the PIP to her colleagues and communicated over email instead of face-to-face;

---

[5]Because Steyer signs as the "Manager / Supervisor" of Pl.'s Exhs. 1–3, the Court infers that she provided the written feedback on each PIP.

thus, she had not helped "rebuild a relationship that is seemingly broken." *Id*. Again, Jasnic denies that any of those things happened. Pl.'s Resp. DSOF ¶ 46.

Jasnic's third PIP review, in December 2019, was more positive. Steyer reported that Jasnic had "been approachable and cooperative," and also had refrained from engaging in the negative conduct noted in the preceding review. R. 59-3, Def.'s Exh. 3, 12/06/2019 PIP; DSOF ¶ 49. Reflecting that assessment, the check box for "Results partially achieved and/or employee continuing toward satisfactory level" is checked. *Id*.

Then, in January 2020, Bisco issued its final 90-day PIP review. R. 59-3, Def.'s Exh. 4, 1/10/2020 PIP. According to the January review, Jasnic failed to meet Bisco's core values of positivity and performing as a team player. The PIP noted that she had incomplete work assignments and issues with accuracy in her work. *Id*. In December 2019, Bisco's management team, including Suh but supposedly not Steyer, decided to fire Jasnic. DSOF ¶ 54. The parties dispute whether any employees similarly situated to Jasnic were treated more favorably than her. *Id*. ¶¶ 55–59; Pl.'s Resp. DSOF ¶¶ 55–59.

Jasnic filed this lawsuit, and after discovery, Bisco now moves for summary judgment, R. 57, against all counts in the operative pleading, which is the Amended Complaint.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

7

matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

### A. Discrimination (Counts 1 & 4)

Jasnic argues that a reasonable jury could find that she was fired because of her sex and pregnancy. Pl.'s Br. at 8–9. Title VII prohibits employment discrimination on the basis of sex. 42 U.S.C. § 2000e–2(a). The Pregnancy Discrimination Act later amended Title VII by explicitly barring discrimination "on the basis of pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k). The Act

8

clarified the scope of Title VII by recognizing that "for all Title VII purposes, discrim-
ination based on a woman's pregnancy is, on its face, discrimination because of her
sex." *Hall v. Nalco Co.*, 534 F.3d 644, 647 (7th Cir. 2008) (quoting *Newport News
Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 684 (1983)). Likewise, the Illi-
nois Human Rights Act (IHRA for short) makes it a "civil rights violation" for employ-
ers to discriminate against employees, including terminating them "on the basis of
pregnancy, childbirth, or medical or common conditions related to pregnancy or child-
birth." 775 ILCS 5/2-102(I). The Court applies the Title VII framework to discrimina-
tion claims made under the IHRA. *Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547
(7th Cir. 2017).

To prevail on a Title VII discrimination claim, a plaintiff must show that "the
evidence would permit a reasonable factfinder to conclude that the plaintiff's race,
ethnicity, sex, religion, or other proscribed factor caused the discharge or other ad-
verse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th
Cir. 2016). The Seventh Circuit has dispensed with the "direct" and "indirect" frame-
works for analyzing employment discrimination claims, *id.* at 765; the frameworks
had taken on a life of their own, sowing confusion and sometimes imposing a too-high
burden on plaintiffs. But the prima facie framework under *McDonnell Douglas* of
course survives (it was established by the Supreme Court). *Ortiz*, 834 F.3d at 766.

Jasnic does not argue that any direct evidence of intentional discrimination
exists. *See generally* Pl.'s Br. Jasnic instead relies on the indirect method under
*McDonnell Douglas*, which requires her to show that: (1) she belongs to a protected

9

class; (2) she performed her job to the defendant's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside of her protected class were treated more favorably by the defendant. *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (cleaned up). If the plaintiff is able make a prima facie case, then the burden shifts to the employer to provide "a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the defendant successfully rebuts the plaintiff's prima facie case, then the burden shifts back to the plaintiff "to submit evidence that the employer's explanation is pretextual." *Id.*

It is worth noting that the *McDonnell Douglas* framework is just one of the ways to show that "a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's" sex or on another proscribed factor. *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019). Ultimately, the Court must assess the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself." *Id.* (citing *Ortiz*, 834 F.3d at 765).

In arguing against summary judgment, Jasnic enlists the assistance of the *McDonnell Douglas* framework, Pl.'s Br. at 8, conceding that there is no direct evidence that Bisco engaged in pregnancy discrimination. Bisco asserts that Jasnic fails to show that (1) her job performance met Bisco's legitimate expectations; (2) she suffered an adverse employment action; or that (3) similarly situated employees outside her protected class were treated more favorably. Def.'s Br. at 10–11. Bisco also

10

contends that it had a legitimate, non-discriminatory reason for its actions. *Id.* at 15–16. With those battle lines drawn, first up is Jasnic's prima facie case under *McDonnell Douglas*, and then the evidence as a whole under *Ortiz*.

### 1. *McDonnell Douglas*

The Court begins with an examination of the *McDonnell Douglas* factors. Jasnic easily meets the first and third elements. It is undisputed that Jasnic was a member of a protected class. *See* Def.'s Br. at 11; Pl.'s Br. at 9. She was pregnant during the relevant time of the alleged discrimination and Bisco (at the least Steyer—more on this later) was aware that she was pregnant. *See* DSOF ¶¶ 21, 40. It is also undisputed that Jasnic suffered an adverse employment action. Although the parties contest whether Jasnic's placement on the PIP meets this element, *see* Def.'s Br. at 14–15; Pl.'s Br. at 13–14, her firing in December 2019 obviously qualifies, *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016).

Putting aside for the moment whether Jasnic met Bisco's legitimate employment expectations,[6] Jasnic has failed to identify similarly situated employees outside of her protected status who received more favorable treatment. Generally, a plaintiff must show that this similarly situated "comparator" (1) had the same supervisor; (2) was subject to the same standards; and (3) "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish [her] conduct or the

---

[6]In this particular case, because Bisco's proffered reason for Jasnic's firing is poor job performance, the analysis of that element of the prima facie case would "merge[ ] with[ ] the question of pretext." *Vaughn v. Vilsack*, 715 F.3d 1001, 1007 (7th Cir. 2013). The Court will discuss this issue when it considers the evidence in its totality. *See Ortiz*, 834 F.3d at 765.

employer's treatment of [her]." *Orton-Bell v. Indiana*, 759 F.3d 768, 777 (7th Cir. 2014) (cleaned up). Although comparators do not need to be identical to the plaintiff, they must be similar enough that "the distinctions between the plaintiff and the proposed comparators are not so significant that [the distinctions] render the comparison effectively useless." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (cleaned up). As a reminder, even though the prima facie case itself does not play a formal role at trial (as distinct from the summary judgment stage), the evidence relating to comparators must still be viewed in the light most favorable to Jasnic.

Here, Jasnic points to five comparators: Tony Adler, Liang Chen, Tom Czervionke, Mike Davidson, and Don Rice. PSOAF ¶¶ 33–37. As an initial question, there is uncertainty over who supervised Jasnic and who ultimately decided to fire her. This is important because, generally speaking, a similarly situated comparator ought to have been working under the same supervisors who made the employment decisions as to the plaintiff. It is true that Jasnic reported to Park before Steyer replaced him as supervisor in April 2019. DSOF ¶¶ 3–4. Steyer also supervised Jasnic during the October through December 2019 PIP reviews. *See* Def.'s Exhs 1–3. But Jasnic's final PIP, dated January 2020, is—curiously—not signed by anyone. 01/10/2020 PIP. This leaves open the possibility that Steyer or Suh—or both—contributed to the final decision to fire Jasnic. *Cf.* R. 59-3, Def.'s Exh. C, Carolyn Suh Dep. at 90:22–25 (suggesting the management team consisting of Julie Suh, Won Suh, Dave Keyser, Tom Czervionke, and Kevin McCauley made the decision).

12

Either way, Jasnic does not offer any evidence that the five comparators worked in Jasnic's department or were supervised by Steyer or Suh. *See generally* PSOAF ¶¶ 33–37. As already mentioned, Czervionke was a member of the management team and unlikely to be supervised by either Steyer or Suh. Suh Dep. at 90:22–25. Chen was purportedly Bisco's Director of Research and Development, Jasnic Dep. at 198:5–6, a position without any apparent overlap with Steyer or Suh. And finally, the record contains no mention of Davidson or Rice's job titles and their place in Bisco's chain-of-command.[7] Even when the evidence is viewed in Jasnic's favor, given the absence of a shared disciplinary decision-maker with Plaintiff, the five employees are not similarly situated comparators. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (explaining that typically a plaintiff must show "that the two [similarly situated] employees dealt with the same supervisor[.]") (cleaned up).

It is worth noting that, although Jasnic failed to offer similarly situated compartors, Bisco's own additional evidence of four employees who were fired for failing to meet the company's core values is itself *not* sufficient to show the absence of discrimination. *See* Def.'s Br. at 13; Def.'s Reply at 10–11. Bisco offers the examples of Yangtong Jenny Wang (Senior Research Scientist), Carrie Osing (Regulatory Affairs Manager), Kyung Boo (Production Assembler), and Tony Adler (Director of Finance

---

[7]Tony Adler, Director of Finance & Administration, was fired on May 27, 2020, due to "safety violation/core values" and thus is not a proper comparator for purposes of this analysis. *See* R. 59-5, Def.'s Exh. E, Michael Smith Decl. ¶ 12. Even if Adler had not been fired, Jasnic fails to show he had the same supervisor or occupied a relevantly similar job position as Jasnic.

& Administration) as employees who were fired for failing to meet Bisco's core values. *See* Smith Decl. ¶¶ 8–12. None of these employees share relevant attributes with Jasnic, including the same supervisor, job position, or disciplinary record. This category of evidence thus falls short as a defense on two grounds: (1) evidence of employees who received comparable treatment does *not* mean that there are no employees who received more favorable treatment; and (2) Bisco concedes that none of these employees were supervised by Steyer. *See* Def.'s Br. at 14.

In any event, returning to Jansic's proffered comparators, even if Jasnic had shown that the five comparators worked in her department and shared the same supervisors, she does not provide sufficient evidence that they engaged in similar conduct and faced more favorable treatment. Indeed, Jasnic offers no evidence concerning each comparator's position and whether they had similar disciplinary records or similar performance reviews. *See Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 896–97 (7th Cir. 2018) (affirming grant of summary judgment because plaintiff provided insufficient evidence of similarly situated employees). Rather, she relies on conclusory and speculative allegations not based on her *personal* knowledge and that do not otherwise appear to have an admissible-evidence basis. *See e.g.*, Jasnic Dep. at 196:24–197:8 ("All of my knowledge [about Czervionke] is what people have said that are very close with the Suhs."); *id.* at 206:15–19 ("It was because the Suhs felt that Liang Chen was just not doing his job properly."); *id.* at 206:22–207:4 ("[Rice] was not a good employee at all. He never got his work done. He was always late on everything."); *id.* at 207:16–22 ("[Davidson is] an individual that does not

14

really speak to anyone in the company. He will never say hello to you down the hall."). To the extent that Jasnic did have some personal interactions with the comparators— and she did have a few, as the cited deposition testimony notes—she still falls short of admissible evidence of the comparator's overall job performance. For example, Jasnic's broad deposition testimony that Rice "never got his work done," Jasnic Dep. at 206:22–207:4, would not be admissible at trial without Jasnic providing the *foundation* for that knowledge—how did she know this? Did she obtain Rice's personnel file? Did others tell her this? Jasnic simply does not offer the foundation for her conclusions and characterizations of others. *See McDaniel*, 940 F.3d at 369 (7th Cir. 2019) (rejecting speculative and conclusory assertions of "evidence that [plaintiff] was treated less favorably than similarly situated employees") (cleaned up). Because Jasnic has not identified any similarly situated employees to allow a factfinder to conduct a "meaningful comparison," even with the evidence viewed in her favor, she has failed to establish a prima facie case for discrimination. *Id*.

## 2. Overall Circumstantial Evidence

Moving on, the Court next considers "whether the totality of the evidence shows discrimination," *see Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021) (citing *Ortiz*, 834 F.3d at 765), an analysis in which the Court "eschew[s] any framework or formula." *Id*. Instead, the Court will "aggregat[e] the evidence to find an overall likelihood of discrimination." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 924 (7th Cir. 2020) (cleaned up).

15

An examination of the circumstantial evidence does yield enough for a reasonable jury to find that Bisco fired Jasnic based on her pregnancy. The starting point is Jasnic's initial PIP dated September 27, 2019. 09/27/2019 PIP. On the documentation of the PIP's initiation, Bisco limited itself to three reasons for putting Jasnic on the plan after her attendance at the 2019 ADA event: (1) Jasnic did not show up to "a Bisco paid outing" (that is, the Alcatraz tour); (2) she did not "engage with guests" during a new dentist reception; and (3) she was not seen at the Bisco booth on the Friday of the event. *Id.*; *see* DSOF ¶¶ 27–35. Consequently, according to Bisco, Jasnic needed to improve on her "positivity and perform[ance] as a team player." *Id.; see* DSOF ¶ 36.

Jasnic contests these three justifications, asserting in turn that (1) she informed Steyer that she could not attend the Alcatraz tour due to her morning sickness, Pl.'s Resp. DSOF ¶¶ 27, 30, 34; (2) she completed her job tasks by engaging with guests and vendors each day at the reception, *id.* ¶¶ 27, 30, 32; and (3) she was likely attending a Friday course during the time that she was observed to be absent at the Bisco booth, *id.* ¶¶ 27, 30–31. Unlike the speculation about comparators, here Jasnic is testifying based on personal knowledge of each purported basis for the PIP. Given the lack of a basis for the PIP, Jasnic argues, the real motivation for the PIP was her pregnancy. The key question is whether Suh knew about the pregnancy at all. Remember that Jasnic had alerted Steyer (her immediate supervisor) of the pregnancy in August 2019. DSOF ¶ 21. Although Steyer assured Jasnic that she would keep news of Jasnic's pregnancy confidential, *id.*, Jasnic argues that a reasonable jury

16

could find that Steyer told Suh about the pregnancy as a result of Jasnic's failure to attend the Alcatraz boat tour. Pl.'s Resp. DSOF ¶ 29. The chain of reasoning is this: Suh decided to institute the PIP in part because of the missed Alcatraz trip. But it would make little sense to institute the PIP for Steyer's supervisee (Jasnic) without talking with Steyer first—and Steyer knew about the pregnancy and knew (crediting Jasnic's testimony) that Jasnic missed the tour because of her morning sickness. DSOF ¶¶ 21, 22; PSOAF ¶ 13. It is reasonable to infer that, in those circumstances, Steyer naturally told Suh about Jasnic's pregnancy and Jasnic's proffered reason for the missed tour; indeed, it would be a form of supervisor malpractice, so to speak, not to. This would all have happened in a very compressed time period relative to instituting the PIP. What this means is that a reasonable jury could find that Suh, knowing of Jasnic's pregnancy, imposed a baseless (in Jasnic's telling of events) PIP.

Moving forward, it is true that, in the month following the September placement on the PIP, Bisco informed Jasnic that, so far, she had not achieved the necessary improvement results. The PIP documentation cites two reasons: she sarcastically spoke about the PIP to colleagues and communicated over email as opposed to face-to-face. 11/01/2019 PIP. Jasnic denies having spoken sarcastically about the PIP, Pl.'s Resp. DSOF ¶ 46; Jasnic Dep. at 214:6–8, and points out that the initial PIP did not set forth an improvement metric about communicating more face-to-face than via email. In any event, during the next month's PIP review, Bisco actually determined that Jasnic had been "approachable and cooperative" and had not discussed the PIP

17

with others. 12/06/2019 PIP. More importantly, the PIP review declared that Jasnic was "continuing toward [a] satisfactory level" and "partially achieved" results. *Id.*

At that point, then, Jasnic was on a satisfactory path. Yet the final January 2020 review was negative—and suspiciously so. *See* 01/10/2020 PIP. First—unlike the initiating document and all the prior reviews—the final review is not signed by anyone. *Id.* Bisco offers no explanation why no supervisor signed the damning review. Second, the review alleged—for the *first* time during the PIP process—that Jasnic's "lack of effort to perform her duties well and on-time" excluded her as a "performing team player." *Id.* The final review noted that there were allegedly incomplete assignments, including work associated with two product lines: "Bisco and Reliance." But this criticism was absent in any previous PIP review, as well as the PIP initiating document (even though the performance problems allegedly happened before the PIP began). And just as odd, according to Jasnic (who must be credited at this stage of the case), no one had told her about these alleged problems during the PIP. PSOAF ¶¶ 26–28, 31–32. Viewing the evidence in Jasnic's favor, Bisco offered out-of-the-blue grounds to fire Jasnic, all without giving her a chance to address the alleged problems. These circumstances raise doubt about the true justification for Jasnic's firing.

For its part, Bisco contends that Jasnic had been performing her job duties poorly well before the implementation of the PIP. For example, Steyer contends that she criticized Jasnic's work during the first month that Steyer was her supervisor. DSOF ¶ 18; Def.'s Resp. PSOAF ¶ 5. But Jasnic denies ever receiving any criticism from her supervisors, PSOAF ¶ 1, and that assertion must be credited right now.

Indeed, the March 2019 performance review, which is the most recent review before the PIP's initiation, described Jasnic's work performance in glowing terms. PSOAF ¶ 3; *see* Performance Evaluation.

Bisco also contends that Jasnic mishandled the post-market surveillance project that she was assigned in July 2019. DSOF ¶¶ 19–20. Jasnic denies this, *see* Pl.'s Resp. DSOF ¶¶ 19–20, and it is undisputed that Jasnic completed all of the reports, PSOAF ¶ 32. Just as importantly, this alleged performance problem too was not raised in formulating the September 2019 PIP. Again, the rationale for the PIP was the events at the ADA convention—*not* any previous workplace issues. *See* 09/27/2019 PIP; Def.'s Resp. PSOAF ¶ 32 ("Defendant admits that Jasnic was not written up or put on a PIP [in] respon[se] to the PMS reports.").

To the extent that Bisco alleges that Jasnic failed in work related to "Bisco's top selling products," that problem supposedly happened in October 2019. DSOF ¶¶ 41–42. Yet Bisco did *not* raise this issue in the November or December 2019 PIP reviews. *See* 11/01/2019 PIP, 12/06/2019 PIP. All in all, then, viewing the evidence in light most favorable to Jasnic, a reasonable factfinder could infer that the negative final review was baseless. Instead, given that Suh learned (in Jasnic's version of the events) of the pregnancy right before instituting the PIP, and then the PIP ended in a set of false reasons for the firing, a jury could reasonably find that Bisco was motivated by Jasnic's pregnancy. Summary judgment is denied against the discrimination claims.

19

## B. Retaliation (Counts 2 & 5)

Jasnic also contends that she was fired in retaliation for complaining to Steyer that her PIP was motivated by her pregnancy. Pl.'s Br. at 22–23. To establish a prima facie case of retaliation, Jasnic must show that she (1) opposed an unlawful employment practice under Title VII; (2) was the object of a materially adverse action; and (3) that the adverse action was caused by her opposition to the unlawful employment practice. *Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 461 (7th Cir. 2021). The ultimate question is: "Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge?" *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 578 (7th Cir. 2021) (cleaned up).

Here, Jasnic fails to offer enough evidence that her placement on (and continuation of) the PIP was a materially adverse action in response to her opposition against an unlawful employment practice. Although Jasnic contends that Suh knew about her pregnancy before September 27, 2019, *see* Pl.'s Resp. to DSOF ¶ 29, the record is devoid of any evidence that she was placed on the PIP in *retaliation* for a sex-discrimination complaint. The timing does not logically work: the initiation of the PIP happened, and *after* that is when Jasnic complained about pregnancy discrimination. So the initiation of the PIP itself cannot be the product of retaliation.

The continuation of the PIP in theory can be, as a matter of timing, the product of retaliation, but the PIP's continuation does not qualify as an adverse employment action. To be sure, for purposes of a retaliation claim (as distinct from a discrimination claim), an adverse action need only be the type of action that would dissuade a

20

reasonable employee from complaining about discrimination. But the initial PIP (which could not be retaliatory) already included provisions for periodic 30-day reviews, so Jasnic would have been subject to the reviews regardless of her complaints. DSOF ¶ 38. So the PIP's continuation cannot be the basis for a retaliation claim.

That leaves the firing. This aspect of the claim does satisfy, of course, the adverse-action element. But causation is the problem. To establish causation for a Title VII retaliation claim (and the parties assume the same for the Illinois Human Rights Act retaliation claim), the plaintiff must show "but-for" causation. *Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 748–49 (7th Cir. 2021) (cleaned up). Circumstantial evidence of but-for causation may include "suspicious timing, ambiguous oral or written statements, or behavior towards or comments directed at other employees in the protected group." *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d 344, 350 (7th Cir. 2009). Jasnic argues that her complaints to Bisco "triggered a series of retaliatory acts toward Jasnic, resulting in her termination." Pl.'s Br. at 23.

But the January 2020 firing took place several months after Jasnic complained about discrimination in September 2019. *See* 01/10/2020 PIP; PSOAF ¶¶ 15, 16, 18. Even moving up the date of the termination decision to the management team's meeting in December 2019, DSOF ¶ 54, more than two months had passed since the protected activity. The Seventh Circuit has held that similar timelines do not establish suspicious timing in multiple cases, even when giving the employee the benefit of reasonable inferences. *Sweet v. Town of Bargersville*, 18 F.4th 273, 279 (7th Cir. 2021) (citing cases). Because suspicious timing alone rarely establishes causation,

21

*Sklyarsky v. Means-Knaus Partners, L.P.*, 777 F.3d 892, 898 (7th Cir. 2015), and there is no other circumstantial evidence to support an inference of causation here, *id.*, the Court grants summary judgment against the Title VII and Illinois Human Rights Act retaliation claims.

### C. Retaliatory Discharge (Count 3)

Finally, Jasnic brings a retaliatory-discharge claim under Illinois common law. Pl.'s Br. at 23–25. To establish a retaliatory-discharge claim under Illinois law, the plaintiff must show that she was: (1) discharged; (2) in retaliation for her protected activities; and (3) that the discharge violates a clear mandate of public policy. *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 628 (7th Cir. 2009). This tort is a "limited and narrow cause of action" that balances the interests of the employer, employee, and society. *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009) (cleaned up); *see Brooks v. Pactiv Corp.*, 729 F.3d 758, 767 (7th Cir. 2013) ("Illinois courts have emphasized that the retaliatory-discharge cause of action is a narrow and limited exception to the employment-at-will doctrine."). To that end, the Illinois Supreme Court has recognized retaliatory discharge actions in only two settings: where (1) an employee is discharged for filing, or anticipate filing, a claim under the Workers' Compensation Act; and (2) an employee is discharged in retaliation for "whistleblowing," or reporting an employer's illegal or improper conduct. *Michael v. Precision Alliance Grp., LLC*, 21 N.E.3d 1183, 1188 (Ill. 2014) (cleaned up). Bisco argues that summary judgment should be granted against this claim because Jasnic's case does not fall into either category. Def.'s Br. at 20.

22

Jasnic concedes that she neither alleges a claim under the Workers' Compensation Act nor as a whistleblower. Instead, she argues that she should be allowed to proceed with her claim because the conduct at issue violates public policy. Pl.'s Br. at 24. But the threshold question is whether the discharge was in retaliation for complaining about pregnancy discrimination. Just as the circumstantial evidence does not support the causal connection for the Title VII retaliation claims, so too with the Illinois retaliatory-discharge claim. Too much time passed between her complaints and the decision to fire her, and there is no other evidence of the retaliatory connection, even when the evidence is viewed in Jasnic's favor. Even crediting Jasnic's assertions about Bisco's failure to address her complaints, the termination is too remote in time to show suspicious timing between her complaint and termination. This claim too is dismissed.

## IV. Conclusion

Bisco's motion for summary judgment is denied on the Title VII and IHRA discrimination claims (Counts 1 and 4), and granted against the Title VII and IHRA retaliation claims (Counts 2 and 5), as well as the common law retaliatory discharge claim (Count 3). With the summary judgment in place, the parties shall engage in good-faith settlement negotiations. The status hearing of April 8, 2022, is reset to May 6, 2022, at 8:30 a.m., but to track the case only (no appearance is required). Instead, the parties shall file a joint status report by April 27, 2022, reporting on the

progress of settlement negotiations and asking for a referral to the magistrate judge if needed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 31, 2022